| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., et al.<br><br>     Plaintiffs,<br><br>v.<br><br>NATIONAL GRID USA, et al.<br><br>     Defendants. | **DEFENDANTS' OBJECTIONS TO MARCH 25, 2026 REPORT AND RECOMMENDATION**<br><br><br>Case No. 1:24-cv-12830 |

Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1)(C), defendants Boston Gas Company ("Boston Gas"), National Grid USA and National Grid USA Service Company, Inc., hereby file the following written objections to select portions of the March 25, 2026 Report and Recommendation (ECF No. 41, the "R&R"). While the Report and Recommendation is in most respects a correct application of the governing law to the amended complaint, there are a limited number of errors of law that, if corrected, will dispose of or further narrow the scope of this case.

The R&R relates to Boston Gas's Motion to Dismiss (ECF No. 18), in which the other defendants joined. Because it relates to a dispositive motion, the Report and Recommendation is subject to de novo review. *See* FED. R. CIV. P. 72(b); *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 5 (1st Cir. 1999).

**OBJECTION 1: The state requirement that gas utility commence repair of a hazardous leak "immediately" and take "continuous action" is more stringent than the federal requirement that a gas utility repair a hazardous leak "promptly."**

Defendants object to the paragraph of the R&R that spans pages 24 to 25 for the reasons set forth in Boston Gas's Memorandum in Support of Motion to Dismiss (ECF No. 24) ("Boston

Gas Memo.) at pages 11–13 and Reply Memorandum in Support of Motion to Dismiss (ECF No. 31) ("Boston Gas Reply") at pages 9–11 and for the reasons set forth below. If the Court sustains this Objection, Count 5 will be dismissed.

The R&R concludes that "the terms 'immediate' and 'promptly' appear to be synonymous in context." R&R at 24. This conclusion is at odds with the federal regulations governing gas utilities and would allow a back door to establishing liability under the Pipeline Safety Act (the "PSA") based on the more stringent Massachusetts standard. Both federal and state regulations establish requirements for the repair of hazardous leaks. The federal requirement is simple: "Hazardous leaks must be repaired promptly." 49 C.F.R. § 192.703(c). The state requirement is more detailed, requiring "the immediate commencement of repair-and continuous action until the conditions are no longer hazardous, the source of the leak is eliminated, and permanent repairs have been completed." 220 CMR 114.04(3)(a). The state standard is more stringent than the federal standard.

First, the federal standard for hazardous leak repair ("promptly") is found in a federal regulation, 49 C.F.R. § 192.703(c). This regulation appears in part 192 of the Code of Federal Regulations, which establishes "Minimum Federal Safety Standards." While § 192.703(c), speaks of actions to be taken "promptly," Part 192 contains many other requirements that actions be taken "immediately," including one in the same Subpart as section 192.703.[1] When PHMSA—the federal regulator of pipeline safety—wants immediate action, PHMSA says so explicitly.

---

[1] *See* 49 C.F.R. § 192.714 ("An operator must repair the following conditions <u>immediately</u> upon discovery") (Subpart M); 49 C.F.R. § 192.615 ("The operator must <u>immediately</u> and directly notify the appropriate public safety answering point or other coordinating agency") (Subpart L); 49 C.F.R. § 192.620 ("Repair a defect <u>immediately</u> if any of the following apply") (Subpart L); 49 C.F.R. § 192.933 ("An operator must treat the following conditions as <u>immediate</u> repair conditions") (Subpart O) (emphasis added in all).

Similarly, when PHMSA wants to limit "prompt" action in Subpart M by adding a hard deadline, it says so. *See* 49 C.F.R. § 192.710(e) ("An operator must promptly, but no later than 180 days after conducting an integrity assessment . . . "). Interpreting "promptly" and "immediately" as synonymous fails to give adequate recognition to PHMSA's choice to use those different words in different parts of its regulations. *See Jette v. United of Omaha Life Ins. Co.*, 18 F.4th 18, 26–28 (1st Cir. 2021) (applying rules of statutory construction to interpret regulations and deferring to agency's choice to use one term "despite knowing how to use [other] terms"); *cf. Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017) ("[U]sually at least, when we're engaged in the business of interpreting statutes we presume differences in language like this convey differences in meaning.") (citing, for example, *Loughrin v. United States*, 573 U.S. 351, 358 (2014)).

Second, the R&R acknowledges the practical differences between the two standards, but reaches the wrong legal conclusion:

> [Defendants] similarly point out that "[o]ne can act promptly, but not immediately," and "engage in prompt repairs even without continuous action." Defendants' observations are not unsound, but they also do not compel the finding that a regulation requiring the immediate commencement of continuous action is unquestionably more stringent than a regulation requiring a leak to be repaired promptly.

R&R at 24.

If Boston Gas's actions or inactions with respect to a particular leak could violate the state standard but not the federal standard, then the state standard is more stringent. The fact that, in theory, Boston Gas could delay responding to a particular leak and thus violate both standards simultaneously does not alter the conclusion that Massachusetts has placed more stringent requirements on gas utilities than PHMSA has.

If the Court sustains Objection 1, Count 5 should be dismissed because it relies on a more

stringent state standard and cannot serve as the basis for a PSA violation. *See* 49 U.S.C. § 60121(c) (allowing suits under the Pipeline Safety Act based on state standards "only to the extent the [state] standard or practice is not more stringent than a comparable minimum [federal] safety standard prescribed under this chapter").

**OBJECTION 2: Plaintiffs Fail to Plead a Violation of Either the Federal or State Regulations Governing the Repair of Hazardous Leaks.**

Defendants object to the R&R's conclusion that "Counts 4 and 5 assert viable violation of the PSA." R&R at 31 for the reasons set forth in Boston Gas Memo. at pages 13–15 and Boston Gas Reply at pages 7–9 and for the reasons set forth below. If the Court sustains this Objection, the sole remaining federal claims, Counts 4 and 5, will be dismissed.

The federal requirement that "[h]azardous leaks must be repaired promptly" requires a case-by-case (or in this instance, leak–by-leak) consideration. But Plaintiffs instead rely solely on an allegation that each leak was not fixed the same day it was identified. By failing to plead *any* leak-specific facts and instead relying on a mistaken reading of the regulations to require same-day repair, *see* R&R at 25 n.1, Plaintiffs fail to plead sufficient facts to establish a violation of federal regulations. *See* Boston Gas Memo. at 13–15. Accordingly, the Court should dismiss Count 4.

The same reasoning applies to the state requirement. State regulation, in 220 CMR 114.00, also requires a leak-specific inquiry: as to each hazardous leak, did Boston Gas commence repairs immediately and take continuous action? It is not enough to quote the regulations in the complaint. *See* Am. Compl. ¶ 312. Plaintiffs must plead facts. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–62 (2007) (rejecting prior formulation of standard that would allow conclusory claims to survive motion to dismiss). Accordingly, as the Amended Complaint fails to allege, as to any Grade 1 leak, the failure to immediately commence repairs or a gap in continuous action, the Court

should dismiss Count 5.

**OBJECTION 3: The Diligent Prosecution Bar**

In order to preserve potential appellate rights, Defendants object to part V.C.4 of the R&R insofar as it declines to recommend dismissal of Counts 4–8 based on the diligent prosecution bar. The R&R correctly recommends that citizen suits seeking to enforce leak repair requirements under the PSA must be analyzed on a leak-by-leak basis. *See* R&R at V.C.1. Should the Court reject this recommendation and allow the Plaintiffs to base a citizen suit on alleged systemic violations, then the system-wide administrative proceedings Boston Gas identified in its Motion to Dismiss, *see* Boston Gas Memo. at 17–20, serve as a bar to this citizen suit for the reasons set forth in Boston Gas Memo. at pages 16–21 and Boston Gas Reply at pages 5–7.

**OBJECTION 4: The Public Shade Tree Law, When Read as a Whole, Does Not Apply to Leaks from Gas Pipelines**

Defendants object to Part V.D of the R&R (pages 31–34) for the reasons set forth in Boston Gas Memo. at pages 21–25 and Boston Gas Reply at pages 13–14 and for the reasons set forth below. If the Court sustains this Objection, Counts 9 and 10 will be dismissed.

This portion of the R&R finds that the Massachusetts Public Shade Tree Law (the "PSTL") applies to methane pollution. Applying well-worn canons of construction to the PSTL as a whole, however, leads to the conclusion that it applies only to physical alterations of trees like cutting, trimming or collisions, not methane pollution.

The R&R errs by focusing solely on section 12 of the PSTL rather than looking at the PSTL (Chapter 87 of the General Laws) as a whole. "Although statutory language is to be construed as written, in keeping with its plain meaning, the language is not to be read in isolation." *Comm'rs of Bristol Cty. Mosquito Control Dist. v. State Reclamation & Mosquito Control Bd.*, 466 Mass. 523, 529 (2013) (cleaned up). Thus, the "provisions of [a] particular chapter in [the] General Laws

are to be construed, where possible, as harmonious whole consistent with legislative purpose, and therefore particular sections in [a] chapter must be read together." *Id.*

Section 12 is a small part of the overall governance scheme established by Chapter 87. Chapter 87 defines "public shade trees" as certain trees (a) on public ways and therefore typically owned by a municipality, the state or a state entity like MassPort; or (b) near, but not on, roadways and therefore typically owned by private parties. *See* M.G.L. c. 87, §§ 1, 7. Sections 2 through 5 lay out the duties and powers of municipal officials called "tree wardens." Each municipality's tree warden is given "care and control of all public shade trees, shrubs and growths in the town, except those within a state highway" and the authority to "enforce all the provisions of law for the preservation of such trees, shrubs and growths." § 2. The PSTL does not allow anyone other than a tree warden to "cut, trim[] or remove[], in whole or in part" a public shade tree. § 3. Tree wardens must follow a process before doing so that includes public notice and a hearing and, if anyone submits a written objection, the tree warden must secure the approval of the mayor or selectmen. §§ 3–4. The PSTL provides for both civil remedies and criminal penalties for violations, with varying types of liability for varying mental states. §§ 6, 10–12. The penalties, of course, are inapplicable when a tree warden properly authorizes damage to a public shade tree. *Id.*

No court has ever held the PSTL applicable to the operation of a gas pipeline. This Court should not be the first. The canons of statutory construction preclude a reading of the PSTL that reaches methane gas pollution. *First*:

> A statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.

*Vita v. New England Baptist Hosp.*, 494 Mass. 824, 834 (2024) (cleaned up). The primary statutory

purpose of the PSTL is municipal governance, not environmental protection.  While the Legislature in 1896 was "likely aware of gas distribution lines," *see* R&R at 32, there is no evidence that they had this sort of potential damage to trees in mind when they enacted the PSTL's framework. Rather, as detailed below, there is strong reason to conclude that the Legislature never intended the PSTL to apply to gas distribution.

*Second*, the canons of *noscitur a sociis* and *ejusdem generis* confirm that the Legislature was concerned with physical damage to trees.  *Noscitur a sociis* "counsels that 'ordinarily the coupling of words denotes an intention that they should be understood in the same general sense.'" *People for the Ethical Treatment of Animals, Inc. v. Dep't of Agric. Res*., 477 Mass. 280, 287–88 (2017) (citing additional precedent and treatise).  *Ejusdem generis* "counsels that where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Id.* (cleaned up).  The activities that the PSTL governs are phrased as "cut, trimmed or removed;" § 3; "cut down or remove;" § 4; "trim, cut down or remove;" § 5; "trims, cuts down or removes;" § 10; "cuts, destroys or injures;" § 11; and "injures, defaces or destroys . . . or negligently or wilfully suffers an animal driven by or for him or belonging to him to injure, deface or destroy . . . . [or] by any other means negligently or wilfully injures, defaces or destroys;" § 12. This statutory language makes clear that the PSTL governs only direct, physical alteration of trees and not pollution.  The use of the words "removes" or "any other means" cannot serve to overcome the multiple references to physical alteration of trees.  "A general term in a statute or ordinance takes meaning from the setting in which it is employed.  The literal meaning of a general term in an enactment must be limited so as not to include matters that, although within the letter of the enactment, do not fairly come within its spirit and intent." *Kenney v. Bldg. Comm'r of Melrose*,

315 Mass. 291, 295 (1943) (quoted in *PETA*, *supra*).

*Third,* "[i]f a law has both criminal and civil applications, the rule of lenity governs its interpretations in both settings." *Vita*, 494 Mass. at 847. In applying the rule of lenity to construe a state statute, this Court should apply state law rather than federal law. *Vita*, a civil case, makes clear that the rule of lenity applies in the civil context for purposes of Massachusetts statutes, even if this court would not apply it in construing a federal statute. *See* R&R at 33 (citing federal case for proposition that the rule "applies most directly to criminal actions"). The law is, at best, ambiguous as to whether it applies to non-physical damage. Applying the PSTL to the operation of a natural gas pipeline or other activities that emit air pollution that can damage trees is not consistent with giving the public fair notice of conduct the state wishes to criminalize.

Finally, construing the PSTL to cover gas pipeline operations would also conflict with decades of Supreme Judicial Court precedent that recognizes that the DPU has plenary jurisdiction over gas distribution and municipalities may not exercise authority that conflicts with the DPU's authority. If the PSTL covered gas leaks that damaged trees—a not-uncommon occurrence, according to the Plaintiffs' complaint—gas companies would have to seek the approval of municipal tree wardens to operate their networks in any area where there are public shade trees. In a series of cases, the Supreme Judicial Court has struck down local ordinances that interfere with the DPU's primary role as regulator of natural gas distribution under Chapter 164 of the General Laws. *See, e.g., Boston Gas. Co. v. City of Newton*, 425 Mass. 697, 703 (1997) (invalidating local ordinance that "would impose an additional burden on the plaintiff [gas company], a burden which undermines the 'fundamental State policy of ensuring uniform and efficient utility services to the public'"); *Boston Gas Co. v. City of Somerville*, 420 Mass. 702, 706 (1995) (invalidating local ordinance "which has the practical effect of frustrating the fundamental

State policy of ensuring uniform and efficient utility services to the public"). A reading of Chapter 87 that requires gas companies to seek permission from local authorities to operate certain parts of their distribution network cannot co-exist with Chapter 164 as the Supreme Judicial Court has interpreted it. The Court should not adopt a reading of the PSTL that places the General Laws in conflict. *Tetreault v. Bd. of Selectmen of Lynnfield*, 102 Mass. App. Ct. 330, 335 (2023) ("An overarching principle of statutory construction requires courts to 'take into account the interrelationship of different statutes,'" with the goal of harmonizing other statutes so that they do not 'undercut each other.'") (quoting *Ryan v. Mary Ann Morse Healthcare Corp.*, 483 Mass. 612, 620 (2019)).

If the Court sustains this objection, then the Court should dismiss both Counts 9 and 10, which rely on alleged violations of the PSTL.

**OBJECTION 5: No Plaintiff Hax Plead an Interest in Any Particular Public Shade Tree, an Element of any Cause of Action Under M.G.L. c. 87, § 12.**

Defendants object to Part V.D of the R&R insofar as it recommends that Count 9 not be dismissed for failure to allege an interest in any allegedly damaged public shade tree. For the reasons set forth in Boston Gas Memo. at pages 29–31 and Boston Gas Reply at pages 13–15 and for the reasons set forth below, this is an essential element of the Plaintiffs' cause of action. If the Court sustains this Objection, Count 9 will be dismissed.

Plaintiffs have failed to allege an element of a cause of action under section 12 of Chapter 87: an interest in a damaged public shade tree. If the law does not require plaintiffs to plead (and prove) an interest in a particular tree, then an innumerable number of plaintiffs could file innumerable lawsuits over the same damage to the same trees. While the Magistrate Judge questioned whether this could really be the Legislature's intent during the hearing on the motion to dismiss, *see* Oct. 1, 2025 Motion Hearing Tr. at 36–38, the R&R does not address this

9

fundamental question. *See* R&R at 34 (reporting that "Plaintiffs sufficiently plead that Defendants negligently damaged or destroyed at least 210 public shade trees" but not reporting whether any Plaintiff plead an interest in any listed tree).

In Count 9, the Plaintiffs seek damages for injury to property that they do not claim to own. While courts have recognized that when property owned in common is damaged each owner "may sue to recover for damage to his or her separate proportionate interest in the property," no Massachusetts court has allowed a third party with no ownership interest in damaged property to recover damages for injury to that property. *Nemet v. Boston Water & Sewer Comm'n*, 56 Mass. App. Ct. 104, 113 (2002). Such a rule would allow unlimited plaintiffs and is contrary to basic tort law principles. *See Sullivan v. Old Colony St. Ry. Co.*, 200 Mass. 303, 307–08 (1908) ("Although there has been negligence in the performance of a legal duty, yet it is only those who have suffered damage therefrom that may maintain an action therefor.") (citing authority); 37 Mass. Prac., Tort Law § 13.11 (3d ed.) ("A person owning property which is damaged as a result of the defendant's negligence is entitled to a sum of money which will restore such property to the value which it had just prior to the defendant's negligent act or omission. Such damages are restitutional.").[2]

To the extent that Plaintiffs seek damage for emotional injuries, there is similarly no precedent for recovery. Indeed, Massachusetts has been reluctant to expand negligence law to cover emotional distress damages. In *Payton v. Abbott Labs*, 386 Mass. 540 (1982), the Supreme Judicial Court answered certified questions from this Court regarding a novel claim for infliction

---

[2] The lack of ownership also raises a serious question as to any Plaintiff's standing under Article III to pursue counts 9 (and count 11). *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek."). However, the Court need not reach this federal question when state substantive law so clearly bars recovery.

of emotional distress against a drug manufacturer. The Court discussed the strong common law and policy reasons to reject actions seeking to recover for emotional distress in the absence of physical injury and the historical context in which the law developed. *Id.* at 545–52. Following this discussion, the Supreme Judicial Court adopted the majority rule in the United States and held that plaintiffs would be required to plead and prove "physical harm manifested by objective symptomatology" and "that a reasonable person would have suffered emotional distress under the circumstances of the case" in order to recover. *Id.* at 555–57. Plaintiffs do not make these sorts of allegations.

There is no suggestion that the Legislature intended to displace this basic common law principle with section 12. Rather, section 12 explicitly limits recovery to a plaintiff's "interest" in a tree. Thus, the only proper plaintiffs under section 12 are the municipalities or other "persons" who own the land on which a public shade tree sits.[3]

The Plaintiffs' reading of section 12—that any member of the public who benefits from a public shade tree may sue when the tree is damaged—is inconsistent with the Legislature's choice to limit recovery to "to the town or any person for all damages to its or his interest in" the tree. If the Legislature intended an open-ended class of plaintiffs with no limits, it would have provided that those who damaged trees would be liable "for all damages" to the tree. The Plaintiffs would, contrary to bedrock canons of statutory construction, read the remaining words ("its or his interest in") out of the statute. *See, e.g.*, *Recinos v. Escobar*, 473 Mass. 734, 742-43 (2016) ("A statute

---

[3] Public shade trees are certain trees (a) on public ways and therefore typically owned by a municipality, the state or a state entity; or (b) near, but not on, roadways and therefore typically owned by private parties. *See* M.G.L. c. 87, §§ 1, 7. Those private parties and state entities are all "persons" for purposes of section 12. *See* M.G.L. c. 4, § 7, cl. 23 (defining person): *Commonwealth v. Egleson*, 355 Mass. 259, 262 (1969) ("another" includes the State and municipalities).

should be construed so as to give effect to each word, and no word shall be regarded as surplusage.").

Since the Plaintiffs have failed to plead any "interest" in an allegedly damaged public shade tree, the Court should dismiss Count 9.

**OBJECTION 6: Plaintiffs Fail to Plead a Nexus Between Any Negligent Act and Damage to Any Listed Public Shade Tree**

Defendants object to Parts V.D and V.E insofar as they do not recommend dismissal of Counts 9 and 10 for failure to plead a nexus between alleged negligent acts and damage to particular public shade trees. For the reasons set forth in Boston Gas Memo. at page 31 and Boston Gas Reply at pages 14–16 and for the reasons set forth below, this is an essential element of the Plaintiffs' causes of action. If the Court sustains this Objection, Counts 9 and 10 will be dismissed.

The portion of the PSTL on which Plaintiffs rely directly for Count 9 and indirectly for Count 10 explicitly limits liability to one who "negligently or wilfully injures, defaces or destroys" a public shade tree. M.G.L. c. 87, § 12. Thus, the statute requires a nexus between a negligent or willful act and damage. The Amended Complaint alleges that Boston Gas has not repaired certain leaks in a timely fashion and this amounts to negligence. The Amended Complaint also alleges that certain public shade trees have been damaged by gas leaks. However, by lumping all allegedly damaged trees together and failing to link any particular leak to any particular tree, the Plaintiffs have failed to plead the required nexus. The Amended Complaint puts neither the Court nor the defendants on notice of which plaintiffs have interests in which trees, what those interests are, and which alleged leak or leaks damaged those trees.

Since the Plaintiffs have failed to plead a nexus between a negligent act and damage to any public shade tree, the Court should dismiss Counts 9 and 10.

**OBJECTION 7: The PSTL Cannot Serve as a Basis for Plaintiffs' Theory of Liability Under Count 10.**

Defendants object to Part V.E of the R&R (pages 35–36) insofar as it concludes that the PSTL can serve as a basis for the Plaintiffs' claim under M.G.L. c. 214, § 7A. For the reasons set forth in Boston Gas Memo. at pages 21–22 and 25–27 and Boston Gas Reply at page 16 and for the reasons set forth below, the PSTL may not serve as a basis for a Section 7A claim. If the Court sustains this Objection, Count 10 will be dismissed.

To plead a claim for relief under Section 7A, a Plaintiff must allege a violation of a statute, ordinance or bylaw, "the major purpose of which is to prevent or minimize damage to the environment." When read as a whole, the major purpose of the PSTL is not environmental protection but rather municipal governance. *See* Boston Gas Memo. at 27. The statute does not prohibit outright the cutting, trimming or removal of public shade trees. Rather, it sets up a process under which a municipality decides which trees to cut, trim or remove when. The Supreme Judicial Court has held that "it cannot be that the major purpose behind [a statute] is the protection of the environment" when that statute is applicable only if damage to natural resources is sanctioned when it is unauthorized. *Town of Wellfleet v. Glaze*, 403 Mass. 79, 83 (1988). In *Town of Wellfleet*, certain actions that could damage shellfishing resources were subject to sanction only if done without the permission of a licensee. In this case, the PSTL sanctions the cutting and trimming of trees only if done without the proper municipal approvals. "If the Legislature in enacting [the statute] was primarily motivated by a desire to protect the natural resources of the Commonwealth, it surely would not have limited the statutory sanction only to acts done without the licensee's permission." *Id.*

A narrow focus on section 12 is neither permissible (*see* Objection 4, *supra* at 5–6, discussing requirement that statutes be read as a whole) nor of any help to the Plaintiffs. Read in

isolation, the sentence of section 12 that Plaintiffs allege Defendants have violated does nothing to protect the environment. Rather, its focus is compensating those municipalities and persons with interests in public shade trees when those trees are damaged because of the wrongful acts of a third party.

**OBJECTION 8: Adequate Notice of a Citizen Suit is Mandatory and Requires Dismissal Where Not Provided**

Defendants object to the portion of Part V.E on page 37 finding that count 10 may proceed despite the acknowledged deficiencies in the Plaintiffs' notice as to their claims under M.G.L. c. 214, § 7A, based on the PSTL. For the reasons set forth in Boston Gas Memo. at pages 27–28 and Boston Gas Reply at pages 16–17 and for the reasons set forth below, the Plaintiffs' notice was deficient, and proper notice of a claim under Section 7A is mandatory. If the Court sustains this Objection, Count 10 will be dismissed.

The R&R seems to acknowledge that the thirty-seven words the Plaintiffs used to provide notice of the factual basis of their PSTL claim were inadequate. R&R at 37.[4] The R&R errs, however, in concluding that the "deficiency is not so glaring here as to warrant dismissal of the claim." *Id.* Once notice is found insufficient, dismissal of a citizen suit is required.

This is the law across the federal courts. In some circuits, notice is jurisdictional, not just mandatory. *See, e.g.*, *StarLink Logistics, Inc. v. ACC, LLC*, 101 F.4th 431, 449–50 (6th Cir. 2024)

---

[4] The notice failed to provide basic facts, such as where the damaged trees are located. The entirety of Plaintiffs' notice was a recitation of the law, allegations concerning the impacts of the alleged violations and the following statement:

> In the affected neighborhoods, throughout 2023 and 2024, Plaintiffs' investigators found more than 200 gassed trees that show signs of damage or were dead with high methane concentrations in their tree pits and corresponding low oxygen concentrations.

Am. Compl. Ex. 4 at 19. This is manifestly insufficient.

(holding that CWA claims that lacked proper notice "must be dismissed for lack of jurisdiction"); *Tan Phu Cuong Inv. LLC v. King Cty.*, 831 F. App'x. 235, 238 (9th Cir. 2020) ("The requirement is jurisdictional; when a party fails to give notice, the court must dismiss the [CWA] claim."). In the context of the CWA, the First Circuit has found notice to be mandatory rather than jurisdictional.[5] However, the Supreme Court long ago instructed that where a notice provision is explicit, its mandatory nature requires dismissal when unmet. *See Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 31 (1989) (affirming dismissal for lack of notice for a RCRA citizen suit, and stating that "if an action is barred by the terms of a statute, it must be dismissed"); *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 475 (6th Cir. 2004) (describing notice requirements as "a limitation that the courts may not excuse").

Accordingly, courts in the First Circuit have dismissed federal citizen suits when notice was inadequate. S*ee Paolino v. JF Realty, LLC*, 710 F.3d 31, 33–34 (1st Cir. 2013) ("Failure to comply with the CWA's sixty-day notice requirement bars such an action and calls for dismissal of the suit."); *id.* at 36 n.4 ("Whether we treat the CWA's notice requirements as strictly jurisdictional or not, they remain mandatory conditions precedent to the filing of a citizen suit."); *Rauseo v. Army Corps of Eng'rs*, 368 F. Supp. 3d 202, 209 (D. Mass. 2019) (Gorton, J.) (dismissing Clean Water Act claim for failure to provide adequate notice); *Allco Renewable Energy Ltd. v. Haaland*, Case No. 1:21-cv-11171-IT, 2022 WL 2373914, at *1 (D. Mass. June 30, 2022) (Talwani,

---

[5] In 2011, the Supreme Court in *Henderson v. Shinseki*, 562 U.S. 428 (2011), articulated the standards for determining whether a procedural pre-suit rule was mandatory or jurisdictional. It explained that courts must look to whether Congress intended for the rule to trigger (or divest) federal courts' jurisdiction. *Henderson*, 562 U.S. at 435–36. In 2021, at least as to citizen suits under the Clean Water Act, the First Circuit held that notice was mandatory but not jurisdictional. *Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 72 (1st Cir. 2021) (holding that the CWA's notice requirement was not jurisdictional) ("The sixty-day notice requirement is mandatory, but it is a procedural rule that does not implicate subject matter jurisdiction.").

J.) ("In the First Circuit 'strict compliance with the notice provision in environmental statutes is required and failure to abide by . . . [such a provision] is fatal to the suit and can be cured only by dismissal and refiling after proper notice.'" (alterations in original; quoting *Garcia v. Cecos Int'l, Inc.*, 761 F.2d 76, 79 (1st Cir. 1985)).

Here, the notice requirement is found in a Massachusetts statute, rather than a federal statute. Nothing in the state statute or the state case law, however, suggests a different outcome than would be obtained under the federal rule: lack of notice requires dismissal. *See Currence v. A.D. Makepeace Co.*, 106 Mass. App. Ct. 71, 75 (2025) ("Under c. 214, § 7A, the plaintiffs <u>must</u> provide notice 'at least twenty-one days' prior to bringing suit." (emphasis added); *Martinson v. Bd. of Uxbridge*, 50 Mass. App. Ct. 1107, 2000 WL 1707796, at *2 (Nov. 13, 2000) (Rule 1:28) (noting that the Superior Court found it lacked jurisdiction due to the plaintiffs' failure to provide notice). This makes sense. Citizen suits under section 7A are designed to target ongoing environmental harm—the exclusive remedy is injunctive relief. A notice requirement allows the allegedly offending party to cure any wrongdoing, obviating any need for citizen enforcement. It would cut against the purpose of a citizen suit statute with notice requirements to remove the opportunity for a speedy resolution of environmental issues without the need for litigation. Accordingly, the Court should dismiss Count 10 in its entirety.

**OBJECTION 9: Plaintiffs Fail to Plead a Special Injury Different in Kind from the Public Sufficient to Permit Them to Maintain an Action for Public Nuisance.**

Defendants object to part V.F.2.b of the R&R (pages 42–43) for the reasons set forth in Boston Gas Memo. at pages 31–32 and Boston Gas Reply at pages 18–19 and for the reasons set forth below. If the Court sustains this Objection, Count 13 will be dismissed.

The R&R incorrectly finds that the Plaintiffs have pleaded a special injury sufficient to allow them—rather than the Attorney General—to maintain an action for public nuisance. In part

V.F.2.a, the R&R correctly applies the governing law and finds that the Plaintiffs have failed to plead a special injury sufficient to allow them to maintain an action for public nuisance with respect to alleged tree damage (Count 12). In distinguishing Count 12 and Count 13, the R&R reads:

> Moreover, Plaintiffs plead that a gas leak caused two 200-pound manhole covers to explode in the Financial District in 2022 and allege there are 26 specific leaks that pose an imminent risk of explosion and fire "in the Affected Neighborhoods" of Plaintiffs. (D. 16 at ¶¶ 105, 364).
>
> While it remains to be seen whether the facts match the rhetoric, the court finds at this juncture that Count 13 pleads a valid public nuisance claim to the extent it alleges that Plaintiffs are genuinely in close proximity to specific identified leaks that present an imminent risk of explosion or fire.

R&R at 43.

The problem with this conclusion is that while the Plaintiffs allege that they are all in close proximity to specific identified leaks, that does not distinguish the Plaintiffs from the hundreds of thousands if not millions of other people who "live, work, and recreate near Defendants' gas leaks that pose an imminent explosion and fire risk." R&R at 42–43 (quoting Am. Compl. ¶ 188). The Plaintiffs do not suggest that the specific leaks they identify as posing an imminent risk are anywhere but in urban areas accessible to and in fact accessed by the general public (e.g., manholes under public streets or the outside walls of buildings). *See* ATTACHMENT A (list of leaks that are potentially the subject of Count 13); ATTACHMENT B (maps showing those locations).[6] Plaintiffs do not differentiate among themselves, or even allege that any particular plaintiff lives, works or recreates near a specific leak more than other people who live, work or recreate in Boston and Chelsea.

*Sullivan v. Chief Just. for Admin. & Mgmt. of Trial Ct.*, 448 Mass. 15 (2006) controls here.

---

[6] Following receipt of the Plaintiffs' initial notice of intent to sue in August 2024, Boston Gas ensured that none of these alleged leaks actually presented an ongoing hazard by either confirming records of repairs or responding to the area of the alleged leak.

In *Sullivan*, the Supreme Judicial Court found that only the Attorney General and not private plaintiffs could maintain an action for a public nuisance arising out of alleged failure to manage asbestos in the Cambridge courthouse. The *Sullivan* "plaintiffs all have their principal places of business in the Sullivan Courthouse, or they practice law there." *Id.* at 18. The Supreme Judicial Court found that only the Attorney General could bring an action for public nuisance because the plaintiffs failed to plead a special injury "different in kind from that suffered by other members of the public enjoying the same common right, namely, the preservation of their health and safety." *Id.* at 36. "While individuals employed by particular organizations housed in the building may face the greatest exposure, other members of both the legal community and the general public may very well spend significant periods of time in the Sullivan Courthouse and face the same kind of harm." *Id.*

The plaintiffs in *Sullivan* and the publicly accessible courthouse in which they claimed exposure to environmental risks are indistinguishable from the plaintiffs in this case and the public places in which they claim to exposure to risks of fire and explosion. If individuals who work every day in a particular courthouse are not permitted to maintain an action for public nuisance arising out of risks associated with being exposed to asbestos risk because members of the public also have access to the building during business hours, then the plaintiffs in this case may not maintain an action for public nuisance arising out of fire and explosion risks associated with being in particular locations in Boston and Chelsea where other members of the public have access to the same locations 24 hours per day, seven days per week, 365 days per year.

For purposes of standing to bring a public nuisance claim, Count 13 is indistinguishable from Count 12 and the claim in *Sullivan* and should be dismissed.

**OBJECTION 10: Boston Gas's Legislatively Authorized Natural Gas Distribution Pipelines Cannot Constitute a Public Nuisance as a Matter of Law.**

Defendants object to part V.F.2 of the R&R insofar as it declines to recommend dismissal of Count 13 because Boston Gas's distribution network cannot constitute a public nuisance as a matter of law. For the reasons set forth in Boston Gas Memo. at pages 32–33 and for the reasons set forth below, as a regulated utility authorized by the Massachusetts Legislature to provide gas service in Boston and Chelsea, any risk of fire or explosion associated with this service cannot be a public nuisance as a matter of law. If the Court sustains this Objection, Count 13 will be dismissed, and the Court will have adopted an independent basis for the dismissal of Count 12.

This argument was raised before the Magistrate Judge, *see* ECF No. 24 at 32–33, but not addressed in the R&R. The gravamen of Count 13 is that "Plaintiffs are genuinely in close proximity to specific identified leaks that present an imminent risk of explosion or fire." R&R at 43. It is undisputed that operation of any gas pipeline carries risks. For an activity to qualify as a nuisance, however, the "gravity of the harm" caused by the activity must "outweigh[] the utility" of the conduct. *See Rattigan v. Wile*, 445 Mass. 850, 856–57 (2006) (citation omitted). For Boston Gas's customers, gas is an essential service. Massachusetts has made a policy judgment that the benefits of providing this essential service (e.g., heat, hot water, the ability to prepare sanitary food) outweigh the risks of fire and explosion. A regulated, legislatively authorized public utility operating its network cannot constitute a public nuisance. "Within certain limits, it is a principle of long standing that when the Legislature directs or allows that to be done which would otherwise be a nuisance, it will be valid, upon the ground that the Legislature is ordinarily the proper judge of what the public good requires." *See Town of Hull v. Massachusetts Port Auth.*, 441 Mass. 508, 518 (2004) (cleaned up); *Smith v. New England Aircraft Co.*, 270 Mass. 511, 523 (1930) ("Legislative sanction makes that lawful which otherwise might be a nuisance"). The considerations underlying this principle are amplified in the context of a public nuisance claim

grounded not in actual damage to public rights, but the possibility of future damage if certain risks are realized.

The Massachusetts Legislature, cognizant of the risks associated with natural gas distribution, has repeatedly authorized Boston Gas to operate its distribution system under the watchful eye of the Department of Public Utilities.  *See* M.G.L. c. 164 (allowing for the operation and providing for the regulation of gas distribution companies); St.1822, c. 41; St.1846, cs. 36, 98; St.1847, c. 21; St.1850, c. 202; St.1852, cs. 103, 179, 198; St.1853, cs. 29, 63, 320; St.1854, cs. 9, 104, 321; St.1860, c. 94; St.1896, c. 537 (establishing gas franchises operated by Boston Gas).  As such, any risk of future harm cannot constitute a public nuisance under *Town of Hull* and *Smith*.

<div style="margin-left:50%">

Respectfully submitted,

BOSTON GAS COMPANY, NATIONAL GRID USA and NATIONAL GRID USA SERVICE COMPANY, INC.

By their attorneys,

</div>

DATED: April 14, 2026

<div style="margin-left:50%">

*/s/ Benjamin A. Goldberger*
Benjamin A. Goldberger (BBO#654357)
Matthew R. Bowser (BBO#710769)
Lon F. Povich (BBO#544523)
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
(617) 621-6500
bgoldberger@andersonkreiger.com
mbowser@andersonkreiger.com
lpovich@andersonkreiger.com

</div>

## CERTIFICATE OF SERVICE

I, Benjamin A. Goldberger, hereby certify that I filed this document with the Clerk of the United States District Court for the District of Massachusetts on this 14th day of April 2026 by using the CM/ECF system, with service made on counsel for all parties to this action through their registration in the CM/ECF system.

<div style="margin-left:50%">

*/s/ Benjamin A. Goldberger*
Benjamin A. Goldberger

</div>